UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIA ALVES, individually, and on behalf
of all others similarly situated,

                        Plaintiff,

    v.

AFFILIATED HOME CARE OF PUTNAM,
INC., and BARBARA KESSMAN, in her
individual capacity,

                       Defendants.

No. 16-CV-1593 (KMK)

OPINION & ORDER

---

Appearances:

Daniel C. Stafford, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Plaintiff*

Nathaniel K. Charny, Esq.
Charny & Associates
Rhinebeck, NY
*Counsel for Plaintiff*

Steven Felsenfeld, Esq.
Law Offices of Robert Hilpert
Croton-on-Hudson, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Maria Alves ("Plaintiff") brings this collective Action on behalf of herself and others similarly situated against Affiliated Home Care of Putnam, Inc. ("Affiliated") and Barbara Kessman (collectively, "Defendants"), seeking to recover overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and Article 6 of the New York State Labor Law ("NYLL"). (*See* Am. Compl. ¶ 1 (Dkt. No. 10).) Plaintiff moves for: (1)

conditional certification of a collective action pursuant to 29 U.S.C. § 216(b); (2) authorization to send Court-approved notice of this Action to potential opt-in plaintiffs; and (3) an order compelling Defendants to produce the names and addresses of such individuals. (*See* Mem. of Law in Supp. of Pls.' Mot. To Proceed as a Collective Action, for Court-Authorized Not. and for Disclosure of the Names and Addresses of Potential Opt-In Pls.) ("Pl.'s Mem.") 1 (Dkt. No. 16).)[1] For the reasons set forth below, Plaintiff's Motion is granted.

## I. Background

### A. Factual Background

Plaintiff was employed by Defendants as a home health care aide from December 23, 2006 through December 4, 2015. (Am. Compl. ¶ 4.) Plaintiff's responsibilities included "bathing and grooming patients," services Plaintiff asserts are "typically provided by home health aides." (*Id.* ¶ 20.) Plaintiff avers that at the direction of Defendants, she also performed tasks "outside the scope of her employment," (*id.* ¶ 21), such as "removing garbage, dusting, cleaning refrigerators, cleaning ovens, cleaning common areas and areas of homes not ordinarily used by patients, shoveling snow, ironing the patients' clothes and sheets, ironing clothes belonging to other members of the household, washing windows and curtains, transporting firewood into homes, and caring for plants and gardens," (*id.* ¶ 20). Plaintiff asserts that the amount of time she and others employed by Defendants spent on such work "regularly exceed[ed] [20] percent of the employees' working time." (*Id.*)[2] Plaintiff alleges that she

---

[1] The Court notes that the memorandum of law indicates that it supports a motion brought by multiple *plaintiffs*. (*See* Dkt. No. 16.) However, as additional plaintiffs have yet to join the Action, in the current stage of the litigation, the Court will refer to the Motion and the accompanying memorandum as one brought by a singular Plaintiff, Maria Alves.

[2] While Defendants contend that "[n]owhere has [P]laintiff alleged in her Amended [C]omplaint or in [the] Alves Dec[laration] that she expended over 20% of her time engaged in work that would be deemed outside of the routine scope of [her] duties," (Defs.' Opp'n to Mot.

regularly worked in excess of 40 hours per week, (*id.* ¶ 23), and for all services—both typical and outside the scope of her employment—she was paid between $12.00 and $16.00 per hour, (*id.* ¶ 22).  Plaintiff alleges that "[d]espite regularly working in excess of 40 hours per week," Defendants never provided her overtime pay.  (*Id.* ¶ 24.)

Plaintiff further asserts that Defendants failed to display the required federal and state notices regarding wage and hour requirements.  (*Id.* ¶¶ 28, 29.)  Plaintiff alleges that "Defendants engaged in the practice of issuing two checks for a single seven-day pay period—one for the first 40 hours and another for any hours in excess," (*id.* ¶ 25), and that Defendants used the same practice for Plaintiff and other similarly-situated employees, (*id.* ¶ 26).  Plaintiff contends that such techniques allow Defendants to "manipulate[] payroll records" and "mask [Affiliated's] wrongdoing." (*Id.*)

Plaintiff avers that she "became aware through observations and conversations that other employees of Defendants performed the same or similar tasks" as Plaintiff and that Plaintiff "observed these employees frequently working over 40 hours per week and not being paid overtime wages."  (Decl. of Maria Alves ("Alves Decl.") ¶ 6 (Dkt. No. 15-1).)  Plaintiff asserts that upon her knowledge, "Defendants presently employ approximately 30 other individuals with the same responsibilities that [Plaintiff] once had."  (*Id.*)

B.  Procedural History

Plaintiff filed her original Complaint on March 2, 2016, (Dkt. No. 1), and Defendants filed an Answer on May 2, 2016, (Dkt. No. 9).  Plaintiff filed an Amended Complaint on May 12, 2016, (Dkt. No. 10), and Defendants filed an Answer to the Amended Complaint and,

---

For Conditional Collective Cert. ("Defs.' Opp'n") 14 (Dkt. No. 22)), the Amended Complaint contains such an allegation, (*see* Am. Compl. ¶¶ 20, 21, 22).

additionally, a Counterclaim against Plaintiff on May 26, 2016, (Dkt. No. 11). Plaintiff filed an Answer to Defendants' Counterclaim on June 20, 2016. (Dkt. No. 12.) On August 17, 2016, Plaintiff filed the instant Motion and accompanying memorandum of law. (Dkt. Nos. 15–16.) On September 15, 2016, Defendants filed their opposition to Plaintiff's Motion, (Dkt. No. 22), and on September 29, 2016, Plaintiff filed her reply, (Dkt. No. 23).[3]

## II.  Discussion

### A.  Applicable Law

#### 1.  The FLSA

The FLSA requires employers to pay their employees overtime wages, at a rate of one and one-half times an employee's normal hourly rate, for any hours worked in excess of 40 hours in a single week. 29 U.S.C. §§ 206, 207. For any violation of these requirements, the FLSA authorizes an aggrieved employee to bring a collective action on behalf of herself and "other employees similarly situated." *Id.* § 216(b). Such a collective action falls outside the ambit of Federal Rule of Civil Procedure 23 and, therefore, does not require a showing of numerosity, commonality, typicality, or adequacy of representation. *See Davis v. Lenox Hill Hosp.*, No. 03-CV-3746, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) ("The requirements of Rule 23 do not apply to FLSA actions and no showing of numerosity, commonality, typicality and adequacy of representation need be made."). Plaintiffs who wish to participate in a collective action under

---

[3] At a conference on September 12, 2016, the Court issued a scheduling order setting forth a briefing schedule for Plaintiff's Motion To Dismiss Defendants' Counterclaim. (*See* Dkt. (minute entry for Sept. 12, 2016); Dkt. No. 21.) On November 1, 2016, Plaintiff filed a Motion To Dismiss Defendants' Counterclaim and supporting papers. (Dkt. Nos. 27–29.) Defendants filed an opposition to Plaintiff's Motion To Dismiss on November 14, 2016, (Dkt. No. 30), and on the same day filed an amended opposition, (Dkt. No. 31). Plaintiff filed a reply to Defendants' opposition to the Motion To Dismiss on December 2, 2016. (Dkt. No. 32.) The Court will address that motion in a separate order.

the FLSA must "opt-in" to the action by consenting in writing and filing such consents with the court; the court may also provide notice to other potential similarly-situated employees to inform them of the opportunity to opt-in and participate in the action. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . .").

Courts apply a two-pronged approach when determining whether to certify a collective action under § 216(b). First, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). Second, the "court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* If the record reveals that such opt-in plaintiffs are not similarly situated, the court may de-certify the action and dismiss the opt-in plaintiffs' claims without prejudice. *See id.*[4]

---

[4] In *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 103 n.1 (E.D.N.Y. 2011), Judge Cogan described the unique procedural posture of the conditional certification stage under the FLSA:

> Courts . . . and the Second Circuit, *see e.g.*, *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 357 (2d Cir. 2011), have called this stage of the FLSA proceeding, "conditional certification." This is a misnomer and may obfuscate the leniency of the standard employed to authorize plaintiffs' counsel to send notices of the action. When the Court allows notices to be sent out, it is only making a preliminary determination—often based solely on allegations—of whether plaintiffs are "similarly situated" under 8 U.S.C. § 216. The Court is not assuming that a class exists as Rule 23 used to permit courts to do; there is no class in a collective action. Nor is the Court certifying anything—class or otherwise.

(citations omitted).

        2.  Home Care Final Rule

Prior to October 13, 2015, the FLSA exempted domestic service employees from minimum wage and maximum hour requirements.  *See* 29 U.S.C. § 213(a)(15) ("[Minimum wage and maximum hour provisions of] this title shall not apply with respect to . . . any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves . . . .").  However, the performance of general household work of the type Plaintiff contends she and others performed is not exempt from overtime payment if such work exceeded 20 percent of the total weekly hours worked.  *See* 29 C.F.R. § 552.6(b) ("The term companionship services also includes the provision of care if the care is provided attendant to and in conjunction with the provision of fellowship and protection and *if it does not exceed 20 percent of the total hours worked per person and per workweek.*" (emphasis added)).

On October 1, 2013, the Department of Labor ("DOL") issued the "Home Care Final Rule," *see* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 (Oct. 1, 2013) (to be codified at 29 C.F.R. pt. 552), effecting changes to the DOL's regulations regarding domestic services employment.  Among other changes, the new rule precluded third-party employers—such as Defendants—from claiming the exemption under the FLSA's overtime provisions for companionship services or live-in domestic service employees.  *See* 29 C.F.R. § 552.109(a) ("Third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption . . . .").  The Rule was intended to go into effect on January 1, 2015, *see* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. at 60,494, however, in June 2014, associations of home care companies filed an action challenging the new rule, *see*

6

Complaint, *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014) (No. 14-CV-967).  In December 2014 and January 2015, the United States District Court for the District of Columbia issued opinions and orders vacating the rule's revised third-party regulation and revised definition of companionship services, respectively.  *See id.* at 148 ("[T]he United States Department of Labor's Third Party Employer regulation, promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.109, is hereby VACATED."); *Home Care Ass'n of Am. v. Weil*, 78 F. Supp. 3d 123, 130 (D.D.C. 2015) ("[T]he United States Department of Labor's regulation defining 'companionship services,' promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.6, is hereby VACATED.").  The DOL appealed and the Court of Appeals for the District of Columbia Circuit issued a unanimous opinion affirming the validity of the Home Care Final Rule and reversing the orders of the district court.  *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1097 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2506 (2016).  The Rule became effective on October 13, 2015.  *See* News Release, Dep't of Labor, Statement by US Labor Secretary Thomas E. Perez on Implementing Minimum Wage, Overtime Protections for Home Care Workers (Oct. 6. 2015), https://www.dol.gov/opa/media/press/opa/OPA20151992.htm.

    B.  Analysis

        1.  Certification of Collective Action

Plaintiff seeks conditional certification of the instant Action on the basis of the claims asserted in the Amended Complaint.  (*See* Pl.'s Mem. 1.)  Because, as is the case here, the conditional certification of an action often takes place before discovery, the Second Circuit has explained that, to warrant certification, a plaintiff need only make a "modest factual showing" that she and potential opt-in plaintiffs "together were victims of a common policy or plan that

violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). While "[t]his modest factual showing cannot be satisfied simply by unsupported assertions," the showing "should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* similarly[-]situated plaintiffs do in fact exist." *Id.* (internal quotation marks omitted); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (noting the "burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage"). Importantly, a plaintiff may satisfy this burden by relying on "[her] own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008); *see also Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12-CV-75, 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013) ("The burden may be satisfied through the pleadings and affidavits alone."). Indeed, courts in the Second Circuit have granted conditional collective certification on the basis of just one or two affidavits establishing a common practice. *See, e.g.*, *Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (granting certification based on a single affidavit of the named plaintiff); *Sanchez*, 2013 WL 208909, at *1 (finding the plaintiffs had met their "light burden" by submitting an affidavit stating that one of the plaintiffs "observed other employees who performed the same job duties that [she] performed" and had "knowledge that those other employees worked more than [40] hours per week but were not separately paid an overtime premium" (internal quotation marks omitted)); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-CV-265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (authorizing certification where the plaintiff had submitted a single declaration "confirming that she and other non-exempt employees

employed by [the] defendants . . . who performed work similar to hers[] were . . . paid less than the statutory minimum wage and not paid overtime pay").

Defendants contest Plaintiff's allegations "that [Defendants] directed her and other like employees to perform 'work' (such as chopping wood and shoveling snow) that might arguably remove them from the ambit of the Overtime exemption as existed prior to October 13, 2015," (*See* Defs.' Opp'n to Mot. for Conditional Collective Cert. ("Defs.' Opp'n") 3 (Dkt. No. 22)), and assert that Plaintiff has failed to provide "so much as one affidavit or declaration in support," (*id.*). However, Plaintiff has, indeed, submitted a declaration swearing that based on her "observations and conversations," "other employees of Defendants performed the same or similar tasks" as Plaintiff and that "these employees frequently work[ed] over 40 hours per week and [were] not . . . paid overtime wages." (Alves Decl. ¶ 6.) Plaintiff asserts that upon her knowledge, "Defendants presently employ approximately 30 other individuals with the same responsibilities that [Plaintiff] once had." (*Id.*) As noted *supra*, Plaintiff's own declaration is sufficient to meet the light burden she faces at the notice stage, and Defendants' competing factual assertions may not defeat Plaintiff's motion for conditional class certification. *See Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) ("[I]f the plaintiff's allegations are sufficient on their face to support conditional certification, a defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions."); *see also Colon v. Major Perry St. Corp.*, No. 12-CV-3788, 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013) ("The [d]efendants . . . may not defeat a court's determination that [the] [p]laintiffs are similarly situated by submitting their own affidavits."); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-1145, 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010) (finding the defendants' submission of competing affidavits "amount[ed] to a premature request to make credibility

9

determinations and factual findings, something that is inappropriate at the notice stage"). "The court's limited role at this stage is simply to determine whether the plaintiff has sufficiently alleged that [s]he and other employees were victims of a common compensation policy that violated the FLSA." *Jeong Woo Kim*, 985 F. Supp. 2d at 446. The Court thus finds that Plaintiff has made the requisite "modest factual showing," *Myers*, 624 F.3d at 555, and grants Plaintiff's motion for conditional certification.[5]

### 2. Court-Authorized Notice

Plaintiff also seeks Court-authorized notice of this Action to potential opt-in plaintiffs, (*see* Pl.'s Mem. 1), and submits a notice to the Court, (*see* Court-Authorized Notice and Consent to Become a Party Pl. ("Proposed Notice") 1 (Dkt. No. 16-1)). The benefits of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Id.* at 172.

---

[5] In their opposition to Plaintiff's Motion, Defendants make much of the distinction between Personal Care Aides ("PCAs") and Home Health Care Aides ("HHAs"). (*See* Defs.' Opp'n 2.) Defendants assert that Plaintiff and "the other putative members of the 'class'" were employed by Defendants as PCAs, "essentially . . . glorified babysitter[s]" and that "[P]laintiff insists that she and they be certified as a class of Home Health Care Aides." (*Id.*) However, for the purpose of Plaintiff's Motion To Proceed as a Collective Action, the distinction between PCAs and HHAs is immaterial. The FLSA authorizes an employee to bring a collective action on behalf of herself and "other employees similarly situated," 29 U.S.C. § 216(b), and "the purpose of this first stage is merely to determine whether similarly[-]situated plaintiffs do in fact exist," *Myers*, 624 F.3d at 555 (emphasis omitted). Should the Court authorize notice to be sent to potential opt-in plaintiffs, Defendants can submit a motion to de-certify the Action. This second phase will necessarily involve a "more stringent factual determination," *Lynch*, 491 F. Supp. 2d at 368, where the Court will, "on a fuller record, determine whether [the collective action] may go forward [because] the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," *Myers*, 624 F.3d at 555.

While Plaintiff brings claims under both the FLSA and NYLL, (*see* Am. Compl. ¶ 1), she seeks certification only pursuant to the FLSA, and does not seek to certify a Rule 23 class under the NYLL.  For willful violations of the FSLA, as Plaintiff here alleges, (*see id*. ¶ 56), the maximum statute of limitations is three years.  *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.").  Under the FLSA, the statute of limitations is not tolled until a plaintiff opts in to the action, that is, files written consent with the court.  *See id*. § 256 ("[A] collective or class action instituted under the [FLSA] . . . shall be considered to be commenced in the case of any individual claimant—(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear—*on the subsequent date on which such written consent is filed* in the court in which the action was commenced.").

"[N]otice is generally directed to those employed within three years of the date of the mailing of the notice," *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (same), however, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date," *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Slamna v. API Rest. Corp.*, No. 12-CV-757, 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013) (same).  The Court finds that it is appropriate to calculate the three-year period for notice from the filing of this Action on March

11

2, 2016. Therefore, March 2, 2013 is the earliest that a potential plaintiff could have been employed by Defendants in order to have a timely claim pursuant to the FLSA. Defendants are free, however, to challenge the timeliness of a potential plaintiff's claims in the future. Therefore, Plaintiff must amend the Proposed Notice to direct the notice to "[a]ll non-exempt manual workers who were employed at or by Affiliated Home Care of Pelham, Inc. and/or Barbara Kessman from March 2, 2013 to present."

In the instant Motion, "Plaintiff proposes a nine month opt-in period to allow sufficient time for prospective plaintiffs to be apprised of this [A]ction." (Pl.'s Mem. 5 n.2.) Courts in the Second Circuit routinely restrict the opt-in period to no more than 60 days. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566–67 (S.D.N.Y. 2015) (imposing a 60-day opt-in period); *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *11–12 (E.D.N.Y. July 29, 2015) (setting the opt-in period at the "standard [60] days" and collecting cases in which a 60-day period was imposed). While some courts have granted longer opt-in periods, they generally do so when agreed upon by the parties or where special circumstances warrant an extended period. *See, e.g.*, *Fang v. Zhuang*, No. 10-CV-1290, 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (providing for 90-day period "in light of the frequent, long-term international travel of many of the prospective plaintiffs"). Plaintiff does not persuasively argue that the circumstances of this suit necessitate an extended opt-in period, and the Court is aware of no reason that the standard 60 days would be insufficient.[6] Thus, the Proposed Notice is to be

---

[6] Plaintiff suggests that her status (and potentially that of other employees) as a "migrant worker" entitles her to a longer opt-in period. (*See* Alves Decl. ¶ 9; Pl.'s Mem. 5 n.2.). As support, Plaintiff cites *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y. 2002), in which the court found that a nine-month opt-in period for a class of migrant farm workers was "not unreasonable" due to the anticipation of "significant difficulties in locating potential opt-in plaintiffs," noting that they "migrate not only within North America, but from as far away as Bangladesh." *Id.* at 240–41 (alteration omitted). Here, Plaintiff offers no arguments

12

amended to require opt-in plaintiffs to consent to join the Action within 60 days of the date of the notice, provided that the Court will entertain untimely motions to join on a showing of good cause for the delay.

### 3. Disclosure of the Names and Addresses of Potential Opt-In Plaintiffs

Plaintiff additionally requests an order compelling Defendants to produce the names and last-known addresses of potential opt-in plaintiffs. (*See* Pl.'s Mem. 5–6.) "It is now commonplace in this Circuit to require the provision of personal contact information to class counsel for the purposes of notifying a class of a collective action and enabling class counsel to obtain relevant discovery." *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11-CV-2461, 2012 WL 340114, at *1 (S.D.N.Y. Jan. 17, 2012) (collecting cases). Accordingly, Defendants shall provide to Plaintiff a list of potential opt-in plaintiffs who were employed on or after March 2, 2013 within 14 days of the date of this Order. The list shall include names, last-known addresses, and dates of employment for each individual.

---

regarding challenges in locating potential opt-in plaintiffs. Indeed, Plaintiff asserts that Defendants presently employee approximately 30 similarly-situated individuals. (*See* Alves Decl. ¶ 6.)

However, Plaintiff does state that both she and other similarly-situated employees face "linguistic . . . barriers." (*Id.* ¶ 9.) Should Plaintiff find that translation of the notice would be useful due to these alleged language barriers, (*id.*), such translation can be accomplished within the 60-day period, *see Fa Ting Wang*, 2015 WL 4603117, at *12 (finding proposed translations of the notice into Chinese, Korean, and Spanish adequately addressed a concern about language barriers and that the standard 60-day opt-in period was appropriate.).

III. Conclusion

For the reasons set forth above, Plaintiff's Motion is granted. Counsel shall confer and submit an amended notice to the Court for its approval within 14 days of the date of this Order. The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 15.)

SO ORDERED.

DATED:    February 7, 2017
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

14